S.E.C. v. Stack and we'll hear first from Mr. Martin. Thank you, Your Honors, and may it please the Court, my name is Craig Martin and I represent the Appellant, William Andrew Stack. The S.E.C. asked this Court to hold for the first time that it can disgorge funds from an individual even though he did not receive, benefit, or control those funds. That request exceeds the limits of equitable principles and turns disgorgement into a penalty. It should be rejected and this Court should remand to the District Court to recalculate a proper disgorgement that is limited to the funds that Mr. Stack actually received and benefited from. The District Court assessed joint and several disgorgement pursuant to the Supreme Court's precedent in S.E.C. v. Liu and it entered judgment pursuant to equitable principles. Since Liu, this Court has not affirmed a joint and several disgorgement award between two individuals and nearly all the District Courts have not either. Affirming joint and several disgorgement here would be unprecedented. Under Liu, close relationships for purposes of establishing joint and several disgorgement exist in only very rare and limited circumstances, such as when co-defendants are married or co-mingle funds or equally benefit from the fruits of a scheme. None of those very rare and limited circumstances exist here and what's more, the S.E.C. Well, he was married to someone who got some of the money, right? I thought, I thought someone. So are you Mr. Stack's wife? Yeah. Ultimately received some of the money? Yeah. So. Why doesn't that count? The amount of money that was sent to Mr. Wise Stack, that would be included in the calculation that we are saying that Mr. Stack could be held jointly and separately alive or could be disgorged for, the $75,000. I'm sorry, I misspoke. So the money that was sent to Mr. Stack's wife, she was not in control of the funds. Those were directed to Mr. Stack's wife at the direction of Will Marshall. Well, that was his most $12,000, $14,000, right? Approximately, yes, Your Honor. So the limited circumstances that would justify a joint and several disgorgement award do not exist here, and the SEC has affirmatively alleged in its complaint that Mr. Stack did not have any idea what was going on behind the scenes at Preston. And ultimately, they've conceded that they can't meet the standards for joint and several disgorgement here because they've moved away from that position on their brief on appeal. Now they contend that the issue is that the $333,000 was a reasonable approximation of what Preston received, and Mr. Stack had signatory authority over Preston's bank account. They contend this even though that Mr. Stack only actually received $75,000, did not control Preston, and did not know about the illegal scheme that Will Marshall was perpetrating to sell unregistered securities to unaccredited investors. Mere signatory authority on a bank account is insufficient to establish control of a to hold somebody liable for funds that they did not actually receive. A fundamental tenet of disgorgement is that it's limited to the funds that the defendant actually received and benefited from. So if a court is going to hold an individual liable for funds that he didn't actually receive or benefit from, then the SEC should have to show that the defendant and a company are one and the same, such that anything that the company receives or benefits from, the defendant benefits from. That's not factually established here by the SEC's complaint. What you're saying is that that's the limit of all the cases to date? This court has not held a joint and several disgorgement award between two individuals since Lew. Right, but well, maybe on this court, but there have been joint and several declarations of disgorgement in the other circumstances you talked about, right? There may have been other consent agreements that were entered into between the parties. Well, I'm not talking about consent agreements, obviously. I'm talking about litigated, either pre or post Lew. You said where the defendant and the co-defendant are conspirators, right? Or married. So the circumstances that would justify a joint and several disgorgement award . . . Right. Yes. So this court has not held a joint and several disgorgement award between two individuals since Lew. Have we had a case that involved that? So Your Honor, this court decided SEC v. Blackburn after Lew. That case involved three individuals who were running a company that were much more involved in running the company than the facts that the SEC has alleged in its complaint here. In that case, the three individuals all had ownership interest in the company. They had executive titles, but they also made direct communications with specific investors and made misrepresentations to those investors directly. That's not alleged by the complaint here. There's no allegation that Will Marshall made direct contact with investors, and there's no allegation that he knew that agents were contacting unaccredited investors to sell unregistered securities. So in that case, this court affirmed a joint and several disgorgement award that did not assess joint and several disgorgement, citing the concerns that the Supreme Court put forth in Lew. That's the same sort of situation that occurred in SEC v. Worldtree. In that case, you had a man and a woman. The man was Perkins. The woman was Gilmore, running a company called Worldtree. The district court found Perkins and Worldtree jointly and severally liable for perpetrating a cherry-picking scheme, but ultimately did not find Gilmore jointly and severally liable with Perkins or Worldtree because she did not participate in the scheme. I think the fundamental principle here that's important is that we're talking about an equitable principle, disgorgement, and the fundamental principle of that remedy is that it's limited to the funds that the defendant actually received. Mr. Stack might have received $75,000. He did not receive $330,000. So the only way to get there is to hold him liable in disgorgement for funds that he didn't actually receive, but somebody or something else did. To do that, you have to draw some sort of legal bridge to get there. I think the SEC's position is that Mr. Stack controlled Preston, but that just simply is not supported by the allegations that they wrote in their complaint. There's 11 paragraphs in the complaint that say in one way or another that Mr. Stack was a figurehead and that Will Marshall actually controlled the company. Is there any explanation as to why Marshall was not charged? No, Your Honor. I think we've asked that question to ourselves. I'm sure you have. We have a record for that, but that's the fundamental principle that we're talking about here, and it's an equitable principle that the Supreme Court has cautioned expanding the scope of because the further that you would expand the scope of that, the farther you get away from the fundamental principles of an equitable remedy. I mean, here . . . So you don't think Congress's codification post-lieu has anything to do with this case? Is that what you're saying? The codification of disgorgement, Your Honor? Yes. The analysis of joint and several disgorgement I do not think is affected here. This court in Hallam did decide that the Section 78U D-7 recognizes a new remedy called legal disgorgement that is distinct from equitable disgorgement. We submitted our 28-J letter to the court signing SEC v. Goebel that held the opposite of that conclusion, that D-7 actually codified the Supreme Court's conclusion in Lieu v. SEC. For purposes of joint and several disgorgement, I do not think that the analysis changes. If the court were interested in revisiting what types of disgorgement exist under the NDAA . . . I was just asking for your view of what the difference is. I find the Hallam case a little confusing, but we'll ask them, SEC, what it thinks about it. I can address that question, Your Honor, if you'd like. The D-7, the easiest way to understand D-7 is that it authorized a remedy. Congress needed to distinguish between the remedies that existed under D-5. D-5 does not explicitly authorize the remedy of disgorgement. It only authorizes equitable remedies. Under Kokosch, the Supreme Court decided that disgorgement was a penalty for purposes of, I believe, 28 U.S.C. 2462, that the five-year statute of limitations would apply to disgorgement. Then Lieu v. SEC comes along and the Supreme Court decides that actually disgorgement isn't a penalty, it's an equitable remedy. In the wake of those two cases, Congress comes back and adds in the NDAA amendments and explicitly authorizes disgorgement under D-7. They also add Section D-8, which adds a new statute of limitations for the equitable disgorgement remedy, and it distinguishes statute of limitations for disgorgement between a statute of limitations for equitable remedies. If Congress was interested in expanding the statute of limitations that was available to get the disgorgement remedy, then it had to add in D-7 as a remedy that was authorized to distinguish between what was available. They did the same thing in Section D-3. The SEC can institute an action for civil penalties under D-3, and now they can also institute an action for disgorgement, but that doesn't mean that they can institute an action for other equitable relief in that distinction. What do you say about their arguments that stack, you know, the depth and variety of securities violations that he committed meant that he basically had to be collaborating with Marshall even if he wasn't a co-conspirator? Yes, Your Honor. I don't believe that their characterization of how involved stack was here with Will Marshall or the extent that he controlled Preston justifies joint and several disgorgement under the circuit's case law. As you can see in Worldtree, Gilmore was not held jointly and severally liable with Perkins or Worldtree, but she was held liable for Section 10b violations, which as an element of that claim requires a high degree of scienter. So here, the SEC hasn't even alleged that Will Marshall knew, or I'm sorry, Mr. Stack knew that Will Marshall was selling unregistered securities to unaccredited investors. The point being would be that Mr. Stack's operating with a lesser degree of scienter than Ms. Gilmore was in Worldtree. Your Honor, I think the—Your Honors, I think the gravamen of the issue is that the SEC has alleged that Will Marshall was Preston's undisclosed control person, and they have not alleged that Mr. Stack was an alter ego of Preston or that somehow he was two sides of the same coin as Preston. That's necessary to hold him liable for funds that he did not actually receive but Preston did. They haven't alleged that he had the power to make decisions on behalf of the company. They haven't alleged that he had the power to make company policies. They haven't alleged that he could hire or fire employees. They haven't alleged that he— Well, there were no employees. Well, Your Honor, if there were— He was, for all practical purposes, it was a storefront, and he ran the storefront. He ran the operation, and he relied on Marshall to have the gold mine, evidently, and Marshall was the one who assembled the salespeople, right? Your Honor, I believe— But they—Marshall couldn't have operated the scheme without Stack and vice versa. Your Honor, I think Will Marshall could have operated the scheme without Stack. He could have been the face of the company. He just didn't want to be. Well, no, because the SEC was pursuing him, right? At that time, I don't know if the SEC was pursuing him or not. Well, sometime during the course of this, the SEC got another consent decree regarding Marshall in another case, evidently. That's true, in the District of Nevada. I think Mr. Stack was—you said Mr. Stack was running the company. Mr. Stack wore a lot of name badges. That doesn't mean that he controlled the company, and that's what's dispositive for joint and several disgorgement. He ran the company out of his house, but just because it was running out of his house, that does not mean that he controlled the direction of the company or that he authorized how funds were spent or that he could make any sort of authoritative decisions on the direction of how the company would go. That's what's really important here. We're talking about equitable disgorgement that is limited to the funds that you actually receive, and it is supposed to be to reset the status quo. If we're going to move off of that bedrock principle, then the bar is pretty high to do that, and these facts don't justify it. Another point I'd like to make, Your Honor, is that the SEC—a fundamental allegation of their complaint is that Mr. Stack did not control Preston, and they relied on that allegation in establishing securities violations against Mr. Stack. Now they turn around and they want to say, oh, Mr. Stack actually controlled Preston sufficiently for purposes of establishing disgorgement, allowing the stack controlled Preston, exceeds the limits of equitable principles. Moreover, the standards for establishing securities violations are lower, and they say he did not control Preston for purposes of establishing securities violations. So over here in disgorgement, where the standard is much higher, they're saying that he did control Preston. These contradictory allegations, they turn this remedy into a penalty. The SEC should not be allowed to take contradictory positions on this point simply to effectuate a remedy that they're seeking. I see that my time has almost expired. Okay. You have time for rebuttal. Thank you. All right.  Ms. Dingell. Good morning, Your Honor. May it please the Court. I'm Carrie Dingell on behalf of the Securities and Exchange Commission. This is a straightforward case. Mr. Stack was the CEO and controlling shareholder of Preston Royalty when it sold unregistered securities to investors while falsely claiming to be in the business of financing gold mines. He was the— But why should he give money back he didn't get?        I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. I mean, I know the money came in the door, but it went here. I think the wife, although they kind of went back and forth on that, I do think that's arguably credited to him, but Marshall is not his wife, and so how can that be credited to him when—if you needed to pay all of us $20 each and you gave me the 60 and I handed out the 20 to the other two, would that be that I got 60? No, Your Honor, but that's not what happened here, and I think the facts are important. Mr. Stack was the only manager of the company. He is the only person who had any authority— Where was he the one who managed, Ms. Stengel? Your Honor, he's the one who— He set up a bank account. They brought him the pigeons because they were soliciting the investors. He wrote up and sent out prospectuses and apparently had something to do with approving press releases, and when the money came in, he gave some of it to himself, and the rest he sent back to Mr. Marshall, whom the SEC, very peculiarly, hasn't even charged. Yes, Your Honor, and let me address multiple points that you've made in that. Yep. First, he reviewed and authorized the offering documents that included misrepresentations. He was the sole person who was held out to investors as being in control of this company, and through false pretenses, he got investors, through the offering documents, to give money to Preston, to bank accounts that he set up and controlled. This is not a case where he's just someone in accounting who technically has signatory authority over this account. He's the only person who has authority over this company. One of the things that he failed to tell investors was that he was taking orders from William Marshall, who is someone who the investors didn't even know about, had no formal relationship with the company. The hypothetical would be, if a defendant stole $60 from person A, and then person B said, hey, give me some of that money, the defendant voluntarily gives money to person B, that he wouldn't then be liable . . . He didn't voluntarily give money to Marshall. That was their arrangement. It was an arrangement that he agreed to by acting as the CEO of the company. Mr. Stack had choices about what to do with the money once it came into Preston's account. Well, every crook has choices. Exactly. But, but, your complaint portrayed Marshall as the hidden hand, the leader, the progenitor, the person who directed and controlled what went on. He was one of the collaborators in the scheme. And all you said about Stack was that he was knowingly or negligently involved. No, I think, Your Honor, was completely right in your question to my friend on the other side when you said that he ran the storefront. He was a critical operator of this scheme. It could not have been carried out without him. Now, this is not a joint and several award because the commission, you know, if you look back at our initial remedies motion to the magistrate judge, we didn't argue that he should be held jointly and severally liable with Marshall. We argued that he should be held liable for the amount that he received and subsequently dissipated through his own securities violations. And under this court's case law in the United States . . . So you're saying joint and several is not on the page? Yes, Your Honor, there's no co-defendant in this case, so there's, there's no one he could be held jointly and severally liable with. That's a matter of, that's ridiculous. We just had a criminal case with restitution imposed jointly and severally and one defendant had fled the jurisdiction, but that didn't prevent a joint and several assessment. I'm confused about that. I thought y'all were. Your Honor, in the, um, the final judgment does not, um, state that this is a joint and several award. Well, I know about that in the play, but you don't want us to affirm on joint and several if we think that's right, but if we think individual is wrong? The, this court can affirm on any basis supported by the record, and I think both bases . . . Well, but if you disagree with it, that would be a little silly for us to affirm on something you disagree on, so please explain that. Your Honor, yes, I will explain it. The award is not technically a joint and several award. This court reviews the final judgment, which does not say that he is jointly and severally liable. Mr. Marshall is not a defendant in this case. Um, there was a separate, um, consent decree with Mr. Marshall has agreed to pay a disgorgement of over a million dollars, um, for money that he stole from a separate set of investors. Mr. Marshall does not reside in the United States. He resides in Canada and Mexico. Um, so the commission did not ask for a joint and several liability award. If he resides in Canada and Mexico, how did the, uh, SEC go after him in Nevada? He, um, agreed to that consent, um, in that case. He may have been residing in the United States at that time. Um, once we, when we filed this case, the commission determined that it was, um, in the interest of conserving resources to go after the main perpetrator of this fraud, who is Mr. Stack. Okay, I just want to be clear on the joint and several. Is it your position, because as you, as you said and as you know, we can affirm on any basis that's in the district court whether the district court relied on that or not. There was A, B, C, and district court said B, and we say C, you can still get affirmed. But if your contention is that joint and several would be improper, that is something I want to make sure I understand. I'm not saying I would affirm on that or not, I just want to understand your argument. Your Honor, I don't believe it would be improper to hold him jointly and severally liable. I think that the district court did not hold him jointly and severally liable, um, and speak. Okay, well then, okay, well then, how do you get around Lew? Your Honor, I don't think we need to get around Lew. I think we meet the requirements of Lew. Give us, give us the most representative case that you have where, and you, as you acknowledge, the defendant gave money back to Marshall. Marshall was at least as deeply involved, apparently he's the one who drew Stack into the web of deception, um, so give us the closest case you have given this situation where one defendant was required to pay back everything even though he didn't receive it. Your Honor, I'd start out by saying that Stack did receive this money, and Stack chose what to do with it. But I'll give you two cases. Stack, the company pressed and received the money. Yes, Your Honor, and under this case, um, this court's opinion in SEC v. Halleck, because Stack controlled the company, controlled that money. Halleck is unpublished. Yes, Your Honor, Halleck is unpublished, right? A non-precedential. I think it's, um, you know, squarely on point here. Well, that's too bad. And I'll give you two other cases. Also before Lew. Yes, Your Honor, so post-Lew, we have, um, the Worldtree case where, um, as my friend on the other side said, a defendant was held jointly and severally liable with the company. That's joining several. That's not being responsible for the entire amount, even though it's, it would be one thing if he and the company were identical, but that's not pled or argued, right? Um, so I . . . Because Marshall was in control. Well, the reason that the commission alleged that Marshall controlled Preston in the complaint was because that was one of Stack's misrepresentations. He was not . . . That's not what he believed to be true. Well, he . . . I mean, it . . . he was the CEO of the company, so he controlled the company. I mean, if the, if the court's interested, you know, there's not a control person liability claim in this case, but if the court's interested in, in, um, control person liability, the . . . No, I'm not interested in what the SEC didn't bring against him. Okay. Your Honor, um, Lew . . . First of all, Mr. Stack says that Lew doesn't control here. Mr. Stack has alleged in his, um, argued in his brief that D7 controls . . . Well, that's because they're characterizing this as essentially joint and several. There's a . . . As I was reading through the briefs, I thought there's a fundamental failure to communicate here about what's going on, and they're, you know, you, your SEC now takes a position that he is individually liable for everything. They're now taking the position that you can only get there by means of joint and several liability. This, that's the critical, um, point of disparity between the parties that you see below. So in the Commission's motion for remedies, which is at, um, ROA 325 to 326, the Commission sought, um, disgorgement individually against Stack for the amount that he received as a result. And now the reason that confusion was introduced is because in response, Stack argued, as he does before this Court, that we're seeking to hold him liable for the actions of Mr. Marshall. Yes. Which is not true. We are seeking to hold him liable for his own actions. That's a legitimate response, however. What did the magistrate hold? So the magistrate, I think, um, so two things. It is true that he can be held liable for his own actions. But in contesting joint, claiming this was a joint and several award and contesting that, Mr. Stack introduced confusion because he used the wrong standard for joint and several liability. And I think that's what the magistrate was responding to. He said that in order to hold two individuals jointly and severally liable, each of them has to have complete knowledge of what the other was doing. That is not the standard. The standard in this circuit under pre-Lieu case law is close collaboration. Under Lieu, it's concerted wrongdoing. Neither of those creates a separate state of mind requirement that requires each individual to have complete knowledge of what the other was doing. Um, it, the state of mind requirement is for the underlying violation. So just to take a step back, joint and several liability is a means of holding two or more individuals liable for the same amount to disgorge. But they each have to have committed a securities law violation before they can be held jointly and severally liable. You can't hold somebody jointly and severally liable for another person's securities law violation. But then why are these post-Lieu decisions, uh, tending toward individual liability based on individual receipts? Because in general, that is, um, you know, always appropriate to hold people individually liable for their individual receipts. But not here. Why? What's the difference? We are holding him individually liable for his individual receipts. No. Why? They split up the proceeds in those other cases. Because he chose, he, it's essential that he actually received and controlled the money. I would completely agree with Your Honor if some of the money had gone into accounts controlled by Mr. Stack and some of the money had gone into accounts controlled by Mr. Marshall. Had that been the case, we would have had to allege joint and several liability if we wanted to hold Mr. Stack liable for the amounts that went to Mr. Marshall. That's not what happened. Mr. Marshall stole all of the money from investors. He controlled the money. He stole it. He decided what to do with it. And under this Court's opinions in United Energy Partners . . . You said Mr. Marshall, you know. Sorry. What was that, Your Honor? You just said Mr. Marshall stole all the money. Sorry. Mr. Stack stole all the money. Well, you did. Maybe that was a fraudulent slip. He, he, Mr. Marshall stole, or Mr. Stack stole all the money, sent some of it to Mr. Marshall. And under this Court's opinions in United Energy Partners and Hallam, there is no tracing requirement where you only hold an individual liable. What if Stack had kept it all? What would Marshall have done? I don't know, Your Honor, because there's an interesting point of testimony in the record from Mr. Stack at ROA 359 where he's talking about telling Mr. Marshall that he plans to resign. And he says, quote, which was kind of a comical discussion because I remember Will saying, who are you going to resign to? All the stock is yours. So Mr. Stack understood that he was in complete control of this company. And Mr. Stack was a securities lawyer. So he knew that by taking on the role as . . . Well, why would you give some other person who's not in your family a gift of like $250,000? I mean, that's just not common. Now, the charities, that's a different story. But just like, oh, I have this friend, let me just give her $250,000. That's kind of rare. So is there not some other explanation for that? It is rare. These are fraudsters. And Mr. Marshall recognized that in order to carry out this fraud involving gold mines, that he needed a front person. He trusted Mr. Stack, who was a securities lawyer who had worked for him to do it. I don't know what other sorts of relationship or business dealings they had apart for this. All I know is that Mr. Stack received and controlled the money. He's the one who was held out to investors as the sole manager of the company, and he stole it. This is from the magistrate judge's decision. The SEC argues that Stack should be held jointly and separately liable for the full amount of the money raised. Then the magistrate goes on to talk about the Lew case, and as the Fifth Circuit recently clarified, Lew allows for joining several liability where partners engaged in concerted wrongdoing. SEC alleges that Stack and Marshall were partners engaged in a concerted fraudulent scheme to under Lew, Stack should be held jointly liable for the full amount of money raised. Now are you disagreeing with how the magistrate explained your argument? Was she wrong? He? She? She? Your Honor, I think that the magistrate was confused, and I agree that that is confusing. If you look back at our brief, we say Stack's transfer of the funds to himself, his confederate, and his wife contradicted the representations in the PPM. But if Magistrate Hightower decided it that way, and the district court accepted it, you know, just accepted it, then that's what you have to defend, it seems to me. Well, Your Honor, we actually met a higher standard, because under joint and self-reliability, you know, all we would need to show is that Stack was engaged in concerted wrongdoing with Mr. Marshall, which he clearly was. There's no requirement that he had to have known every single thing that Marshall was doing. He knew plenty, as alleged in the complaint. It's not a question of how much he knew. They weren't . . . it's whether, probably, they were, in fact, basically one entity, according to the other cases that are there, such that they were both benefiting from $333,000 Yes, Your Honor. The magistrate, I think, confused the issue by importing the joint and several analysis. What happened in the remand on the Ninth Circuit in Loo? In Loo, on remand, the district court held that the two defendants, Mr. Loo and his wife, Ms. Wong, could be held jointly and severally liable for the full amount, including amounts that had been sent to third parties, so even though they dissipated some of the money, even though Ms. Wong's role in that fraud was much more limited than Mr. Loo's. Mr. Loo was the main perpetrator. But they were husband and wife. They were husband and wife, which is one of the things that the Supreme Court mentioned in Loo, but there's no reason to suggest . . . there's nothing, if you read the Loo discussion of joint and several liability, that suggests that that sort of relationship is required. Instead, the standard under Loo is concerted wrongdoing. Now, whether that even applies, I think, is questionable. The Commission thinks that it doesn't matter because we meet both the Loo standard and the D7 standard, which under Hallam imports pre-Loo standard of close collaboration. We think it's clear that they engaged in close collaboration. They engaged in concerted wrongdoing. Had we alleged that Mr. Marshall was a defendant, if we had included him as a defendant, I think joint and several liability would be permissible and acceptable, but just technically, this is not a joint and several liability award. If you review the Commission's briefing, its initial brief to the magistrate judge, we were not seeking this as joint and several liability. We said Stack misappropriated funds raised in the offering for himself and his confederates and to perpetuate the fraudulent scheme. That was an individual award that we were seeking as against Stack for the amount that he stole. I'd just like to, a final point, as far as Mr. Stack's choices are concerned, when he obtained this money from investors, he had choices about what to do with it. This is really the crux of the issue. He could have used the money in the manner that was disclosed to investors through the offering documents that Mr. Stack authorized and used it to fund alluvial gold mines or projects in near-term production. He didn't do that. He could have said to the investors, hey, it looks like we won't be able to use your money in this manner after all. He could have wired the money back to them. He didn't do that. Instead, he decided to divert the money to his personal accounts and to the accounts of others, Mr. Marshall and his wife. Under this court's case law in United Energy Partners and Hallam, he can therefore be held liable for the money, even though he didn't retain it. With that, I would ask the court to please affirm the judgment of the district court. All right. Thank you, ma'am. Okay. Mr. Martin, rebuttal. Thank you, Your Honors. You asked my friend at the SEC what her best case was to support that Mr. Stack was Preston and she cited SEC versus Halleck. That, for all the reasons that you explained, that case is not controlling, but also factually it is not on point here. If you'd like me to go into the details of that case, I'm happy to. My friend also said that Mr. Stack was the main perpetrator of this fraud. The complaint, as alleged and written by the SEC, says in at least 11 paragraphs, in some way or another, that Mr. Stack was only CEO in name only, did Marshall's bidding for him, that Marshall actually controlled Preston, that he was only serving as a figurehead CEO at the behest of Marshall. Marshall drafted all of Preston's corporate press releases and then the complaint quotes Mr. Stack as saying, you've told me that you're bringing in $50,000 per week for months. I'm not sure where that money's gone or if, in fact, it's really even come in. I only know what I'm told. I'm CEO of Preston and I have no idea what is ever being done. What are you quoting from? That is paragraph 103 of the complaint. Your Honor's asked my friend at the SEC if this is about joint and several liability. It's clear in their brief on appeal that they've abandoned that position. Well, that was the position of the lower court. It was the position of the lower court, Your Honor, but the lower court held in finding Mr. Stack jointly and severally liable, and this is from ROA 628. This is the finding of the magistrate judge for joint and several liability. The SEC alleges that Stack and Marshall were partners engaged in concerted fraudulent scheme to dupe investors. Stack ran Preston out of his home, controlled its bank accounts, and was Preston's CEO, President, Secretary, Director, and Treasurer. Accordingly, under lieu, Stack should be held jointly and severally liable for full amounts raised in the scheme, citing Worldtree, and then the parenthetical explains that the wife, Gilmore and Worldtree, was held jointly and severally liable with the company, and that's incorrect in the holding. That's not what this court held in, I think. Well, your opponent contends that joint and several was not the decision here in the district court. Yes, Your Honor. No, it's a little, well, I won't get into that. That's their position. So, do you agree joint and several should be thrown out the window in this case? Your Honor, I do agree that the joint and several liability is the, and I see my time has expired, so if I could answer the question, then I'll be done. But joint and several liability seems to be a stretch as a legal concept to apply some sort of vicarious disgorgement against Stack. It makes a little bit more sense that they would try to pin Stack as Preston, but as simply does not support that for the various reasons I've said. And with that, we ask this court to remain to the district court for a more appropriate disgorgement amount. All right. Thank you. We thank you very much. We will stand in recess under the usual order.